## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| RONALD BEMIS, individually and on behalf of all others similarly situated, | CLASS ACTION COMPLAINT |
| Plaintiff, | JURY TRIAL DEMANDED |
| vs. | Case No: |
| MRSS INC., | |
| Defendant. | |

Plaintiff Ronald Bemis ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against Defendant, MRSS Inc. ("Defendant"). Plaintiff's allegations as to Plaintiff's own actions are based on personal knowledge. The other allegations are based on counsel's investigation, and information and belief.

### NATURE OF ACTION

1.     This is a case about a business that profits from addiction.

2.     Defendant manufactures and sells a psychoactive drug called tianeptine, or "Tia" for short, under the brand "ZaZa." The ZaZa products are sold at hundreds of stores across the United States.

3.     Defendant promises the ZaZa products are dietary supplements that provide a wide array of mental and social benefits that will make users "Feel Good" and "Be Happy."

4.      What Defendant does not disclose is that the ZaZa products contain tianeptine, a full μ-receptor opioid agonist that can lead to severe psychological or physical dependence. In fact, tianeptine shares characteristics with United States Food and Drug Administration (FDA) Schedule II Controlled Substances like morphine, methamphetamine, cocaine, fentanyl, and phencyclidine (PCP).

5.      Indeed, Defendant intentionally formulated ZaZa to be extremely physically and psychologically addictive. As a result, it has high potential for abuse.

6.      This is a class action seeking an injunction shutting down sales of ZaZa (or, in the alternative, obligating Defendant to provide appropriate and adequate warnings), a full refund to class members of all money spent on the product, and/or disgorgement of the substantial profits that Defendant has generated from the sale of the product.

**PARTIES**

7.      Plaintiff Ronald Bemis is domiciled in Tinley Park, Illinois and purchased ZaZa in January 2025 at retail stores located in Illinois.

8.      Plaintiff would not have purchased the ZaZa Products if he had known that it was extremely physically and psychologically addictive with a high potential for abuse.

9.      Plaintiff reviewed and relied on the product labeling at the time of purchase, and none of the aforementioned facts regarding the extreme risk of addiction were disclosed.

10.     Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this action that would create a conflict of interest with the proposed Class members.

11.     As a result of the addictive nature of the product, Plaintiff and every member of the proposed Class is at risk of becoming dependent on the product and being forced to purchase the product again and again.

12.     Indeed, given the addictive nature of ZaZa, Plaintiff and members of the proposed Class are likely to purchase the product again in the future, unless proper warnings are given and/or the product is taken off the market.

13.     Therefore, an injunction would benefit Plaintiff in the future by removing from the market a product that is highly likely to trigger addictive behaviors. An injunction would also protect Plaintiff and members of the proposed Class by removing from the market a product they are otherwise likely to purchase again.

14.     Defendant MRSS Inc. ("MRSS") is a Georgia company with its principal place of business in Atlanta, Georgia. MRSS manufactures, distributes, advertises, and sells the ZaZa products. MRSS also owns various intellectual

property rights to the ZaZa products, including trademarks for ZaZa, ZaZa Red, ZaZa Silver, and ZaZa White.

15.     Defendant designed, tested, researched, manufactured, sold, marketed, distributed, and/or otherwise engaged in acts or omissions which caused harm to Plaintiff and Class members.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this case is a class action where the aggregate claims of all members of the proposed Classes (defined below), exclusive of interest and costs, exceed the sum or value of $5,000,000 and Plaintiff, and at least some members of the proposed Class, are citizens of a different state than Defendant.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendant's principal place of business is in this District and in the Atlanta Division of this District. Defendant's decisions concerning the formulation, marketing, labeling, and sale of the products at issue originated in this District and in the Atlanta Division of this District.

## FACTUAL ALLEGATIONS

### I.    Tianeptine is Highly Addictive

18.    Tianeptine is a synthetic tricyclic compound that is used (with appropriate medical supervision) as prescription antidepressant in some parts of Europe, Asia, and Latin America. It comes in various forms, including tianeptine salts (tianeptine sodium and sulfate) and tianeptine free acid. Tianeptine is not approved for any medical use in the United States.

19.    Tianeptine is a full μ-receptor opioid agonist that binds to and activates opioid receptors in the brain and spinal cord to produce maximal opioid effects. Other examples of full μ-receptor opioid agonists include heroin, oxycodone, methadone, hydrocodone, morphine, and opium.

20.    Tianeptine causes dependence and addiction by stimulating the release of dopamine in the limbic system of the brain. This results in users experiencing a euphoric high that carries a significant risk of overdose. Further, tianeptine has a short half-life that can lead to a rapid withdrawal, increasing its risk for addiction and misuse.

21.    In the United States, tianeptine is one of a wide range of substances commonly referred to as a "gas station drug" because it is sold at gas stations, corner stores, bodegas, and mini-marts. Gas station drugs are typically produced by drug manufacturers or laboratories that aim to manufacture products that mimic the

effects of illicit substances such as marijuana, cocaine, and opioids. Tianeptine products are commonly referred to as "gas station heroin."

22.     A study conducted by the Centers for Disease Control and Prevention ("CDC") in the United States regarding tianeptine exposure found a significant increase in calls to U.S. poison control centers relating to tianeptine exposure between 2014 and 2017. The CDC found that most tianeptine exposures occurred among individuals aged 21–40 who reported neurologic, cardiovascular, and gastrointestinal symptoms, along with symptoms that mimic opioid toxicity. A substantial number of those calls also reported callers were experiencing clinical effects of withdrawal.

23.     As a part of the study, the CDC issued the following public health warning:



## II.    International and Domestic Regulation of Tianeptine

24.    While Tianeptine is available in tightly controlled medical contexts in some countries other than the United States, many countries have banned it outright.

25.    For example, following a significant number of tianeptine overdoses, Turkey classified tianeptine as a controlled substance and banned its use.

26.    Similarly, tianeptine is restricted or banned in Armenia, Ukraine, Singapore, Russia, Bahrain, and Italy.

27.    In the United States, on February 10, 2022, the FDA issued a notice to consumers warning that tianeptine is not approved by the FDA for any medical purpose and that there had been an increase in reports relating to negative reactions to tianeptine.

28.    In February 2024, the Drug Enforcement Administration ("DEA") issued a warning regarding the emerging risks of tianeptine.

29.    Alabama, Delaware, Florida, Kentucky, Mississippi, Michigan, Minnesota, North Carolina Tennessee, Georgia, Indiana, and Ohio have banned, or severely restricted, the sales of tianeptine.

30.    Despite these bans in other countries and many states and warnings from multiple federal government authorities, Defendant continues to market the

product—with no warnings about its addictive potential—in numerous states across the country.

### III.    The ZaZa Products

25.    The subject products at issue in this case are ZaZa Red, ZaZa Silver, and ZaZa White:



26.    The ZaZa products marketed and distributed by Defendant are made with tianeptine (in the form of tianeptine sodium and/or tianeptine free acid).

27.    As discussed above, tianeptine is a psychoactive substance with debilitating effects.

28.     Like opioid products, consumption of ZaZa creates a significant risk of addiction, dependency, and painful withdrawal symptoms, among other negative effects. Opioids are addictive not only because of the pleasurable effects that they produce, but also because sudden cessation of opioid use causes severe withdrawal symptoms which users feel compelled to avoid by taking more of the drug. Users want to stop but cannot.

29.     Substances that act on the opioid receptors, like Defendant's ZaZa products, have a high risk of addiction. Addiction occurs when the user develops a tolerance to the product that requires the user to consume larger and larger doses of the active ingredient to achieve the same effects that a lower dose previously produced. As the doses increase, the body becomes dependent on the active ingredient to feel normal and function properly. When the active ingredient is suddenly taken away or the user tries to stop taking the product, withdrawal occurs. Withdrawal symptoms cause the user to feel much worse than they did before they started taking the product and can be extremely painful and intolerable to the user.

30.     Tianeptine withdrawal symptoms are similar to those of traditional opioid withdrawal. These symptoms include delirium, autonomic dysfunction and/or hyperactivity, agitation, insomnia, headache, restlessness, nausea, vomiting, tachycardia, hypertension, diarrhea, tremors, excessive sweating, drowsiness, and confusion.

31.     Users typically start substances like tianeptine because of how good it makes them feel, but once addicted, they use tianeptine to avoid the pain and sickness of withdrawal. In other words, users are compelled to continue using the product to avoid feeling "sick."

32.     Consumers have communicated that, when they first began taking the ZaZa products, they were unaware of the significant, adverse effects and addictive properties of tianeptine. When reasonable consumers think of opioids, they think of heroin, fentanyl, hydrocodone, oxycodone, or morphine. They do not think that ZaZa products sold at gas stations or other local stores will act like an opioid with the same, if not greater, addiction and dependency risks as opioids. As a result, many unsuspecting consumers have developed, or are at extreme risk of developing, tianeptine dependencies that can cause them serious physical, psychological, and financial harm. Considering these dependencies, once consumers begin buying ZaZa, they often cannot stop and are likely to continue to purchase ZaZa products, even when they don't want to.

33.     Consistent among the reports of addiction from tianeptine products is a feeling of initial shock when users realize they had become unknowingly addicted and how difficult it is to stop their tianeptine use. Below are several accounts from the "Quitting Tianeptine" forum on www.reddit.com, where users complained about their addiction to tianeptine products and ZaZa:

i.    One user wrote: Getting off zaza

I been on 2 to 3 bottles a day now for about 6 months. It's killing me fin[ancii[]ally and ruining my relationship with my family any thought on how to get through it? I have made it down to just one bottle a day a couple times but could never get lower than that. I'm currently having to dose every 3 to 4 hours and I can't keep doing this. I even wake up in the middle of the night every night and have to dose just go to sleep. I'm working 7 days a week just to keep up with the habit and I'm tired I can't keep doing this

ii.    Another user shared: Please help! I take 2 bottles of zaza reds a day and I want to quit!

I am so worried about the withdrawls I take 2 bottles of zaza reds a day. I have tried quitting before but the rls, night sweats and restless arm thing keeps me on them. Please someone help me out with any advice you have. Thank you!

iii.    Another user shared: I first tried Tianeptine (in the form of Tianaa Red) on January 9, 2018. I thought nothing of it when the clerk at a small store I once frequented said "it's just like kratom and all that other stuff." Of course, he'd never used such substances and had no real idea of their differing effects. I purchased a bottle (for $40) and wasn't impressed at first, probably because I was already a narcotics addict (hydrocodone, oxycodone) with an incredibly high tolerance (10-15 10mg tablets at a time, sometimes twice a day). When my county in Alabama (Calhoun) locked down the opiate prescriptions in 2016, I jumped onto kratom. When it was scheduled in 2017, I had nowhere to go and could get nothing. So I gave Tianeptine a second chance on January 11 and was hooked.

For two years and eight months (01/11/18 - 08/11/20), I suffered tremendously. The only two times I ever stopped taking

11

Tianeptine was for a week in July 2018 (I was deployed to Maryland, where I couldn't find it) and for 30 days in September/October the same year (I was deployed to South Carolina and couldn't find it there either, but loaded up on kratom). Both of my relapses were because of that famous lie addiction tells us: I'd quit it for that long, so I can control it in moderation. Those are the famous last words before most relapses.

Addiction is the only disease that tells us it's not a disease.

So, for two years and eight months, I spent every penny I made on Tianaa Red, Za Za Red, Tiara, and Tia-Max. I blew through about $30,000 during that time, taking anywhere from 4-6 bottles a day. I maxed out five credit cards, pawned two car titles, got two loans for $5,000 each, had two payday loans (my checking account and my wife's), and ran up a bill (credit) at the store that first introduced me to Tianeptine for over $6,000. I pawned my wedding band and my wife's silver jewelry, stole money from my son, stole money from others (even from my Church's offering plate...twice), and borrowed from every friend I had (losing a few in the process). I'd once read a comment on Reddit wherein someone warned that you'd sell your soul for that stuff. Boy, did I. I even landed in my local ER twice and gained 40+ lbs.

On August 11, 2020, after my wife had left me and my son had stopped speaking to me, I tried twice that Tuesday morning to hang myself. No matter what I did, I could not stop taking Tianeptine. It was the last thing I thought of before going to bed at night and the first thing I thought of every morning. Every day was a struggle to find money to get more, or else the WDs would set in and devastate me. I experienced it all: restless leg syndrome, profuse sweating (sweat that smelled terrible), runny nose, headaches, and severe full-body pain to the extent that it

felt like I'd been dropped off a third-floor balcony. I could barely walk. So that morning, I called the Employee Assistance Program (EAP) hotline (I work for the Federal government) and was admitted into a detox unit by 1:30 pm, by which time I'd already consumed one 15-count and one 24-count bottle of Za Za Red. Had I not been admitted, I knew I'd have died by that day's end. August 12th, 2020 was my first day without Tianeptine in Heaven knows how long.

34.     This Internet forum is filled with other accounts like these, and the stories echo each other—well-meaning people were looking to feel better by taking with what they thought was an herbal supplement, only to develop an opioid-like addiction. This evidence makes clear that ZaZa's addictive potential is a material fact to reasonable consumers that, if known, would help inform their purchase and consumption decisions.

35.     Addiction is a disease. In making consumers addicted to the ZaZa products, Defendant has created an unreasonable health hazard. At a minimum, Defendant had a duty to fully disclose this fact on the packaging of its products.

## IV.    Defendant Marketed the ZaZa Products In A Deceptive Manner

39.     Defendant markets and sells the ZaZa products without sufficient regard to the serious dangers posed by the products.

40.     Defendant promises the ZaZa products are dietary supplements that provide a wide array of mental and social benefits that will make users "Feel Good" and "Be Happy."

41.     But Defendant fails to disclose material facts, including that ZaZa has at least as significant a potential for addiction as opioids, should not be taken on a daily basis, will result in opioid-like dependency when taken regularly, and will cause adverse effects upon withdrawal.

42.     Defendant also fails to disclose the numerous side effects and withdrawal symptoms caused by the ZaZa products, including delirium, autonomic dysfunction and/or hyperactivity, agitation, insomnia, headache, restlessness, nausea, vomiting, tachycardia, hypertension, diarrhea, tremors, excessive sweating, drowsiness, and confusion.

43.     Moreover, there are no warnings or disclosures on the packaging—or even an asterisk suggesting that purchasers should review the back of the product or information located elsewhere for more information. Photos of the side and back panels of the ZaZa products are below:



**ZaZa Silver Label**

 

**ZaZa White Label**

 

**ZaZa Red Label**

44.    As a direct and proximate result of Defendant's fraudulent

concealment and failure to warn of the numerous material facts identified above,

many unsuspecting ZaZa users find themselves blindsided by adverse effects from

what they thought was a harmless supplement, especially when they stop taking

ZaZa and find themselves facing severe withdrawal symptoms.

45.    Consumers who knew the full truth about ZaZa would not have purchased Defendant's ZaZa products or would have paid less than they did for them.

46.    To make matters worse, Defendant has given ZaZa products out as free samples, with zero warning that the product is significantly addictive, or that continued use may result in severe withdrawal symptoms. The very act of giving out "free samples" is intended by Defendant and is understood by customers as an indication that the product is safe and harmless. Without warnings, consumers have no reason not to try the sample. They may even enjoy the effects and continue using the product because they do not believe a product with no warnings would carry any significant risks or substantial addictive potential.

**V.    Defendant Knew They Were Selling A Highly Addictive Product**

47.    As the marketer, manufacturer, and distributor of ZaZa, Defendant occupies a position of superior knowledge to the average reasonable consumer, who likely knows nothing about ZaZa products.

48.    Defendant manufactures the ZaZa products in a specialized lab using highly technical knowledge about tianeptine salts and free acid to compound the tianeptine in its products. Defendant was and is aware of all ingredients in the ZaZa products and the addiction risks posed by the ZaZa products.

49.     Defendant is aware of research demonstrating the pharmacological effects of tianeptine, including the well-established fact that tianeptine acts on the same μ-opioid receptors in the brain as traditional opioids do, resulting in addictive effects. Defendant was also aware of reports, studies, and regulatory warnings (including those identified above) regarding addiction and dependency arising from tianeptine use.

50.     Therefore, Defendant knew and intentionally designed the ZaZa products to prey on users and take advantage of ZaZa products' great potential to addict users, thereby increasing Defendants' profits.

51.     Nevertheless, Defendant markets the ZaZa products as if they are ordinary, innocuous over-the-counter dietary supplements, with packaging appearing as an innocuous dietary supplement, not a product with addictive potential.

52.     Defendant knew that ZaZa's significant addictive potential and painful withdrawal symptoms would be material facts to reasonable consumers that would influence their purchasing and consumption decisions, yet Defendant failed to disclose these facts on ZaZa's packaging, in its advertisements, or otherwise because Defendant knew that doing so would adversely affect its profits.

53.     Defendant's conduct is contrary to public policy. The United States is experiencing an opiate crisis. Defendant's conduct exacerbates that

crisis—intentionally designing its ZaZa products to have addictive potential and risks of dependency that are at least as great as those of opioids while simultaneously using false and misleading packaging and marketing that deliberately withholds and actively and fraudulently conceals information about the significant risks of addiction its ZaZa products pose—in order to create even more addicts to line its pockets.

54.    Defendant had knowledge of the dangerously addictive nature of its ZaZa products. At a bare minimum, Defendant knew (i) that there was a high probability that the subject products were dangerously addictive and (ii) that the disclaimers on the product labeling either failed to adequately disclose those problems or misleadingly downplayed those risks.

**VI.    No Adequate Remedy at Law**

55.    Plaintiff and Class Members are entitled to equitable relief because no adequate remedy at law exists.

56.    Legal remedies are inadequate because they are not equally prompt and certain and in others way efficient as equitable relief. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

57.    Legal damages are also inadequate to remedy the imminent threat of future harm that Plaintiff faces. Because of the addictive nature of ZaZa products,

Plaintiff and members of the proposed Class are likely to purchase these addictive products again in the future and thus suffer future harm. Only an injunction can remedy this threat of future harm.

## CLASS ACTION ALLEGATIONS

58.    ***Class Definition*:** Plaintiff brings this action on behalf all people in the following class and subclass (collectively referred to as "Class Members"):

     a.    **Nationwide Class**: all people in the United States who purchased a ZaZa product.

     b.    **Illinois Subclass**: all people who purchased a ZaZa Product in Illinois.

59.    Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

60.    Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

61.     ***Numerosity.*** Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail, email, text message, and/or publication in relevant online or print mediums upon review of the distribution records of Defendant, its retailers, its agents, or other means.

62.     ***Commonality and Predominance***. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

a.     Whether Defendant knew or should have known that ZaZa is dangerously addictive;

b.     Whether the dangerously addictive nature of ZaZa products and its painful withdrawal symptoms are material facts to a reasonable person;

c.     Whether Defendant failed to disclose and concealed the dangerous nature of ZaZa;

d.     Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here;

e.     Whether Defendant made false and/or misleading representations or omissions regarding the ZaZa products to consumers;

     f.     Whether consumers reasonably relied on Defendant's representations or omissions regarding the ZaZa products in purchasing them to their detriment;

     g.    Whether Defendant had a duty to disclose the significant risk of causing addiction and/or other significant risks associated with the ZaZa products;

     h.    Whether Defendant breached any such duty;

     i.     Whether Defendant is liable to Plaintiff and Class members for fraud and/or fraudulent concealment or omission; and

     j.     Whether Defendant was negligent in failing to warn Plaintiff and Class members of the significant risk of addiction, dependency, and painful withdrawal symptoms associated with ZaZa products.

63.    *Typicality.* Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that the products at issue here can be dangerous.

64.    *Adequacy*. Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that are antagonistic to those of the Classes. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

65.    *Superiority*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

66.    Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Members of the Classes and will likely retain the benefits of its wrongdoing.

## CAUSES OF ACTION
### COUNT I
**Violation Of Illinois Consumer Fraud Act,**
**815 ILCS 505/1, *et seq.***

67.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

68.    Plaintiff brings this claim individually and on behalf of the members of the proposed Illinois Subclass against Defendant.

69.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material

fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 ILCS 505/2. The ICFA is to be liberally construed to effectuate its purpose.

70. Defendant's advertisements and marketing for ZaZa are deceptive because they represent that the products are dietary supplements that will provide social and mental health benefits, when in fact the ZaZa products are highly addictive and can cause painful withdrawal symptoms.

71. Defendant's advertisements and marketing conceal and fail to disclose that the ZaZa products have the potential to be highly addictive and provide opioid sensation.

72. Defendant intended that Plaintiff and each of the other members of the Illinois Subclass would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

73. By failing to disclose and concealing these facts from Plaintiff and the Illinois Subclass, Defendant violated and continues to violate the ICFA because it advertises the ZaZa products with the intent not to sell them as advertised.

74. Defendant knew that the ZaZa products were not suitable for their intended use because they were addictive.

75.    Defendant has a duty to Plaintiff and the Illinois Class to disclose the addictive nature of the ZaZa products because:

    a.  Defendant is in a superior position to know the products are highly addictive;

    b.  Plaintiff and the Illinois Subclass could not have reasonably been expected to learn or discover the products were addictive until after they purchased the ZaZa products; and

    c.  Defendant knew that Plaintiff and the Illinois Subclass could not have been expected to learn about or discover the addictive nature of the products.

76.    The facts concealed or not disclosed by Defendant to Plaintiff and the Illinois Subclass are material in that a reasonable person would have considered them important in deciding whether or not to purchase the ZaZa products.

77.    Plaintiff and the Illinois Subclass relied on Defendant to disclose material information it knew, such as the addictive nature of the ZaZa products, and not to induce them into a transaction they would not have entered had Defendant disclosed this information.

78.    Had Plaintiff and the Illinois Subclass known that the ZaZa products would be addictive, they would not have purchased the ZaZa products.

79.     Because ZaZa products are addictive, Plaintiff and members of the Illinois Subclass are likely to purchase ZaZa products in the future.

80.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Illinois Subclass have been harmed and sustained actual damages in an amount to be proven at trial.

81.     In addition, Defendant's conduct showed malice, motive, and reckless disregard of the truth such that an award of punitive damages is appropriate.

82.     Plaintiff seeks all relief available under this statutory cause of action, including actual damages.

83.     Plaintiff also seeks equitable relief including, but not limited to, injunctive relief.

## COUNT II
### Breach of Implied Warranty

84.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

85.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class and Illinois Subclass against Defendant.

86.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Product, impliedly warranted that the ZaZa products were merchantable and fit for the ordinary purpose for which they would be used.

87.    Defendant breached the implied warranty of merchantability because the ZaZa products were not in merchantable condition when sold, and did not possess even the most basic degree of fitness for ordinary use.

88.    The ordinary intended purpose of the ZaZa products was to serve as a dietary supplement with mental and social benefits. The ZaZa products were not fit for that use, or any other use, because they are highly addictive. Due to this, and other features, the ZaZa products are not fit for their ordinary, intended use as dietary supplements.

89.    Plaintiff and Class Members were third-party beneficiaries of Defendant's agreements with distributors and sellers for the distribution and sale of the ZaZa products to consumers. Plaintiff and Class Members were the intended beneficiaries of Defendant's implied warranties.

90.    Plaintiff and Class Members were injured as a direct and proximate result of Defendant's breach of its implied warranties of merchantability. Had Plaintiff and Class Members been aware of the unmerchantable condition of the ZaZa products, they would not have purchased the ZaZa products.

91.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on April 1, 2025.

92.    Plaintiff seeks damages in an amount to be proven at trial, as well as any other relief the Court may deem proper.

## COUNT III
### Fraudulent Concealment

93.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

94.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class and Illinois Subclass against Defendant.

95.     Defendant created and implemented a scheme to create a market for the ZaZa products and substantially increase its sales through a pervasive pattern of fraudulent omissions. Defendant portrayed the ZaZa products as dietary supplements with social and mental health benefits, while omitting and concealing key facts concerning the ZaZa products' significant risk of addiction, dependency, and painful withdrawal symptoms.

96.     Defendant's advertisements and representations concealed and failed to disclose material facts, including that the ZaZa products contain a psychoactive substance that carries significant risks of (1) addiction; (2) dependency; and (3) painful withdrawal symptoms—such as delirium, autonomic dysfunction and/or hyperactivity, agitation, insomnia, headache, restlessness, nausea, vomiting, tachycardia, hypertension, diarrhea, tremors, excessive sweating, drowsiness, and confusion.

97.     As the manufacturer, distributor, and marketer of ZaZa, Defendant had actual knowledge of the above-listed material facts, including that ZaZa

products are psychoactive substances that carry a significant risk of addiction, dependency, and painful withdrawal symptoms.

98.     As the manufacturer, distributor, and marketer of ZaZa, Defendant had actual knowledge of the ingredients included in its products and the impact of those ingredients on users. Defendant also knew of the addictive nature of its products and painful withdrawal symptoms because it is aware of existing medical literature produced about tianeptine.

99.     In fraudulently concealing these material facts, Defendant intended to induce Plaintiff and members of the proposed Class into purchasing as many ZaZa products as possible, for as long as possible. Put another way, by fraudulently concealing these material facts, Defendant intended to get consumers like Plaintiff addicted to ZaZa products so that they would buy more and thus increase Defendant's profits.

100.     Plaintiff and members of the proposed Class justifiably relied on Defendant's fraudulent omissions. Plaintiff and members of the proposed Class expected to receive a dietary supplement that would make them feel better, not an opioid product that would cause them to become addicted, suffer serious side effects upon withdrawal, and compel them to repeatedly purchase the product. If Defendant had included an appropriate warning label on ZaZa products, Plaintiff and members of the proposed Class would not have purchased ZaZa products.

101.    Defendant's conduct was fraudulent and deceptive because reasonable consumers, including Plaintiff, would have found the facts Defendant knowingly failed to disclose material to their purchasing decisions.

102.    Defendant owed Plaintiff and the Class a duty under Georgia law to disclose these material facts because it had superior and exclusive knowledge of the facts, and the facts would be material to reasonable consumers. Defendant's duty to disclose arises from the particular circumstances alleged herein because Defendant's concealment of the material facts relates to the intrinsic qualities of ZaZa products and Plaintiff and members of the Class could not reasonably discover these material facts absent a warning from Defendant.

103.    In short, Defendant MRSS failed to disclose that ZaZa has opioid properties, is highly addictive, and can cause dependency and painful withdrawal symptoms. Defendant has failed to disclose these material facts since it began manufacturing and selling ZaZa products in approximately 2017. Defendant should have included these material facts on a product label on the ZaZa bottles themselves.

104.    Plaintiff and members of the proposed Class have been harmed by paying for ZaZa products that they would not have paid for if Defendant had not fraudulently concealed material information.

105.    Defendant's conduct actually and proximately caused Plaintiff and Class Members to suffer economic losses related to their repeated purchases, as well as other general and specific damages. Without Defendant's fraudulent conduct, Plaintiff and Class Members would not have purchased the ZaZa products.

106.    Plaintiff and Class Members seek all available relief, including damages and injunctive relief.

## COUNT IV
### Unjust Enrichment

107.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in paragraphs 1–66 of this complaint.

108.    Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class and Illinois Subclass against Defendant.

109.    To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

110.    Plaintiff and the Class Members conferred a benefit on Defendant when they purchased ZaZa products, *i.e.*, in the form of gross revenues Defendant derived from the money they paid to Defendant for the ZaZa Products.

111.    Defendant knew of the benefit conferred on it by Plaintiff and Class Members and has not adequately compensated Plaintiff and Class Members for this benefit.

112.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the ZaZa Products. Defendant's retention of such revenues under these circumstances is unjust and inequitable because Defendant failed to disclose to Plaintiff and Class Members that the ZaZa products were highly addictive. This caused injuries to Plaintiff and Class Members because they would not have purchased the ZaZa products (or would have paid less for them) had they known the true facts concerning the ZaZa products.

113.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the ZaZa products to Plaintiff and Class Members.

114.    Defendant has profited by retaining this benefit under circumstances which would make it unjust for Defendant to retain the benefit.

115.    Plaintiff and Class Members are, therefore, entitled to restitution in the form of the revenues Defendant derived from its sale of the ZaZa products.

116.    As a direct and proximate result of Defendant's actions, Plaintiff and Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

117.   Plaintiff and Class Members lack an adequate remedy at law with respect to this claim and are entitled to disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## COUNT V
## Negligent Failure to Warn

118.   Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in paragraphs 1–66 of this complaint.

119.   Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class and Illinois Subclass against Defendant.

120.   Defendant was negligent in failing to warn Plaintiff and Class Members that ZaZa products contain a psychoactive substance that could lead to addiction, dependency, and painful withdrawal symptoms.

121.   Defendant had a common law duty under Georgia law to warn Plaintiff and the Class Members of foreseeable dangers arising from the reasonable (indeed, intended) use of its ZaZa products.

122.   The foreseeable dangers arising from the use of ZaZa products include the substantial risks of addiction, dependency, and painful withdrawal symptoms. Defendant had a duty to warn consumers of these risks associated with using ZaZa products by including a warning on the product itself.

123.   Defendant breached its duty to warn of these foreseeable risks when it failed to communicate any such warning to consumers. Defendant breached this

32

duty because it did not include any warnings whatsoever on the ZaZa products themselves.

124.   Defendant's failure to communicate these risks to Plaintiff and Class Members led and proximately caused consumers to purchase ZaZa products when they would not have made such purchases if the products had included warnings stating that the product contained a psychoactive substance and listing the risks of addiction, dependency, and painful withdrawal.

125.   Plaintiff and Class Members have been harmed by Defendant's failure to communicate a warning because they have paid for products that they otherwise would not have paid for.

126.   Plaintiff and Class Members seek all available relief for Defendant's failure to warn them of the dangers its product posed, including damages and injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the proposed class, pray for the following relief:

A.    That the Court certify the proposed Class(es);

B.    That the Court appoint Plaintiff as representative of the Class(es);

C.    That the Court appoint the undersigned counsel as counsel for the Class(es);

D.      That the Court enter a declaration that Defendant's actions complained of herein violated the statute referenced herein;

E.      That the Court enter an order finding in favor of Plaintiff and Class Members on all counts asserted herein;

F.      That the Court award injunctive or other equitable relief as necessary to protect the interests of Plaintiff and the Class Members, including, inter alia, an order prohibiting Defendant from engaging in the unlawful acts described above;

G.      That the Court award actual, compensatory, statutory, nominal, and/or punitive damages in amounts to be determined by the Court and/or jury;

H.      That the Court award prejudgment interest on all amounts awarded;

I.      That the Court enter an order of restitution and all other forms of equitable monetary relief;

J.      That the Court award Plaintiff and Class Members their reasonable attorney fees, expenses, and all other costs associated with this action;

K.      That the Court award all other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a jury trial on all issues so triable.

Dated: June 23, 2025                 Respectfully submitted,

By: /s/ *T. Brandon Waddell*

T. Brandon Waddell
Georgia Bar No. 252639
Annie M. Boring
Georgia Bar No. 209732
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309

Tel: (404) 596-5600
Fax: (404) 596-5604
bwaddell@caplancobb.com
aboring@caplancobb.com


**SMITH KRIVOSHEY, PC**

By: */s/Brittany S. Scott*

Brittany S. Scott
(*pro hac vice* motion forthcoming)
**SMITH KRIVOSHEY, PC**
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: brittany@skclassactions.com


*Attorneys for Plaintiff and the proposed Classes*